**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SPRINGFIELD BUILDING AND CONSTRUCTION TRADES COUNCIL et al., Respondents.**

No. 5395.

United States Court of Appeals First Circuit.

Dec. 31, 1958.

Arnold Ordman, Washington, D. C., with whom Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., were on the brief, for petitioner.

John I. Robinson, Springfield, Mass., with whom Norris E. Dibble, Springfield, Mass., was on the brief for respondents.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

## WOODBURY, Circuit Judge.

The president of a labor organization known as the Springfield Building and Construction Trades Council, at a meeting in May, 1957, attended by representatives of affiliated labor unions, some 20 employers engaged in the construction business in and around Springfield, Massachusetts, and representatives of the local association of employers in the building trades, announced that the Trades Council no longer intended to tolerate the employment of union and non-union men working together on the same job, but that thereafter construction jobs within the Council's jurisdiction must either be run with 100% union men or be run entirely with non-union men. A few weeks later, on or about June 10, Leo, Spear Construction Co., Inc., as the general contractor, submitted a written bid to the Town of Southwick, Massachusetts, for the con-

struction of an addition to the town office building. In accordance with accepted practice in the area Spear included in its bid as general contractor previously submitted sub-bids of James F. Rogers, doing business under the name of Rogers Heating and Engineering Company for the heating work and of Valley Electric and Heating Service for the electrical work. Both of these sub-bids were the lowest submitted for the work covered in each.

The employees of these sub-bidders, Rogers and Valley, were not represented by any union. Spear's employees, on the other hand, were all members of local unions affiliated with the Trades Council and Spear had a contract with the Carpenters' District Council of Springfield which provided in relevant part that: "Members are not allowed to work with non-union Carpenters or Craftsmen specified by the District Council nor with apprentices not recognized by the District Council."

When it became known that Spear's bid was the lowest submitted for the Southwick job, the secretary of the Trades Council notified Spear that there would be "trouble" if the job proceeded with participation by the non-union employees of Rogers and Valley. Spear notified the town authorities of this and when on June 15 Spear and the Town of Southwick executed a written contract on the basis of Spear's bid it was with the oral understanding that if labor difficulties arose Rogers and Valley would be taken out of the general contract. Two days later, further threats of trouble having been made to Spear by the secretary of the Trades Council, Rogers and Valley were taken out of Spear's contract by the execution of a change order.

When representatives of the Trades Council learned that the heating and electrical work had been taken out of Spear's general contract they had a meeting with representatives of the Town in an attempt to dissuade the town authorities from executing separate contracts with Rogers and Valley. The argument advanced by representatives of the Council at that meeting was that neither Rogers nor Valley, nor indeed any other employer of non-union labor, was legally eligible to enter into contracts with the Town because their non-union employees could not work in harmony with union men, and hence no non-union employer could comply with the requirement of Mass.Gen.L. (Ter. Ed.1932) c. 149 § 44A which provides in part that every bidder or sub-bidder for the construction of public buildings for the Commonwealth or any governmental unit thereof "shall certify that he is able to furnish labor that can work in harmony with all other elements of labor employed or to be employed on the work." In spite of efforts to negotiate, no agreement was reached at this meeting and on July 3 the Town entered into separate contracts with Rogers and Valley for the work each had respectively agreed to perform.

On July 8, prior to the appearance on the job of any of Roger's or Valley's employees, the Carpenters' District Council with the approval of the Trades Council, directed its carpenters who were employed by Spear to quit work on the Southwick job. On the next day, at the instigation of their union officials, union bricklayers employed on the job by Hampden Construction Company, another sub-contractor under Spear, failed to report for work.

We turn now to a very similar situation which developed at about the same time in the Town of West Springfield.

In March, 1957, that Town decided to renovate one of its schools and in pursuance of that decision it entered into a number of contracts with the individual contractors who had submitted the lowest bids for the various phases of the work required to put the school back into operation. The Town awarded the contract for the carpentry work involved to the W. J. Quinn Construction Company and the contract for the ventilating work to Rogers. Quinn's carpenters were union men working under a contract between Quinn and the District

Council containing the same provision mentioned above in Spear's contract forbidding the employment of union men with non-union men; Roger's employees, as already appears, were not unionized. The president of the Trades Council attempted to dissuade the town authorities from entering into separate contracts for the various kinds of work involved in renovating the school on the ground that Mass.Gen.L. (Ter.Ed.1932) c. 149 § 44A required a general contract for the entire renovating project with subcontracts for its various aspects, and hinted broadly that trouble would ensue if union and non-union men were employed on the job. These efforts proving fruitless, the District Council, through its business agent, ordered Quinn's union carpenters off the job and when they quit so also did all other union men on the job and a general strike ensued.

On separate charges filed by Spear with respect to the Southwick job and by Rogers with respect to the West Springfield job, General Counsel for the Board issued complaints against the labor organizations involved and their agents charging all respondents with violating § 8(b)(4)(A) of the Labor Management Relations Act, 1947, 61 Stat. 136, 29 U.S.C.A. § 158(b)(4)(A), which makes it an unfair labor practice for a labor organization or its agents " * * * to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment * * * to perform any services, where an object thereof is: (A) forcing or requiring * * * any employer or other person * * * to cease doing business with any other person * * *." The two cases were consolidated and as a result of usual proceedings the trial examiner found on the record as a whole that the respondents had "induced or encouraged the employees of Spear, Hampden and Quinn to engage in strikes or concerted refusals in the course of their employment to perform services for their respective employers with an object of (1) forcing or requiring Spear and the Town of Southwick to cease doing business with Rogers and Valley and (2) forcing or requiring Quinn and the Town of West Springfield to cease doing business with Rogers," and that by such conduct the respondents had committed an unfair labor practice in violation of § 8(b)(4)(A) of the Act. The Board on review adopted the findings, conclusions and recommendations of its trial examiner and ordered the respondents to cease and desist from inducing or encouraging the employees of Spear, Hampden or Quinn *"or any other employer* to engage in a strike or a concerted refusal in the course of their employment to perform services for their respective employers where an object thereof is to force or require the Towns of Southwick or West Springfield *or any other town, employer or person* to cease doing business with [Rogers or Valley] *or any other employer or person"* (italics supplied), and to post appropriate notices. This is the order the Board asks us to enforce.

The facts essential to the jurisdiction of the Board and of this court are conceded. Nor is there any doubt in our minds that the factual findings and conclusions of the trial examiner which the Board adopted as its own are amply supported by the evidence in the record considered as a whole. Indeed, the respondents do not challenge the evidentiary findings underlying the Board's conclusion of a violation of § 8(b)(4)(A) of the Act, nor do they seek to distinguish the case at bar from N.L.R.B. v. Denver Bldg. & Const. Trades Council, 1951, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284. Theirs is a sort of unclean hands argument. It is that their conduct, although in appearance in violation of the above section of the Act as construed in the case just cited, was justified because Rogers and Valley, who are the employers involved whom the Act undertakes to protect, knowingly participated in violating Massachusetts statutory provisions by contracting directly with the towns involved, whereas local law required that in the construction of public

buildings there shall be but one contract between the governmental entity and a general contractor and that sub-contractors shall enter into separate sub-contracts with the general contractor.

█ It may very well be that the letting of separate contracts to Rogers and Valley by the Town of Southwick and to Rogers and Quinn by the Town of West Springfield violated local law. But that does not concern us. It is the function of the Massachusetts authorities to enforce compliance with the Massachusetts law respecting the letting of contracts for the construction of public buildings. The question before us is whether the Labor Management Relations Act, 1947, has been violated and we are not aware of anything in that Act, or in its basic policy, to indicate that its application depends upon compliance by any employer concerned with local statutory provisions regarding the letting of contracts. Indeed, we think the federal Act would lose uniformity of application and be rendered ineffectual to accomplish its purpose if its application were to be made subject to compliance by the persons involved with local statutes, ordinances and policies governing contracts for the erection or repair of public buildings. We find no merit whatever in this defense.

█ Nor do we find any merit in the respondents' further defense that Rogers and Valley were so "allied" with Spear on the Southwick job, and Rogers was so "allied" with Quinn on the West Springfield job, as to constitute for the purpose of § 8(b)(4)(A) of the Act a single employer on each job with whom the respondents had a primary labor dispute. This is not a case like N.L.R.B. v. Business Machine and Office Appliance Etc. Workers, 2 Cir., 1955, 228 F.2d 553, certiorari denied 1956, 351 U.S. 962, 76 S.Ct. 1025, 100 L.Ed. 1483, in which employees of a secondary employer are doing work "farmed out" by a primary employer whose own employees would be doing the work themselves were they not out on strike. On neither job were the employees of either Rogers or Valley doing work which the employees of Spear or of Quinn would have been doing had there been no strike. The contractors and sub-contractors involved herein were wholly independent of one another, and the fact that they "were engaged on the same construction project, and that the contractor had some supervision over the subcontractor's work, did not eliminate the status of each as an independent contractor or make the employees of one the employees of the other. The business relationship between independent contractors is too well established in the law to be overridden without clear language doing so." N.L.R.B. v. Denver Bldg. & Const. Trades Council, supra, 341 U.S. 689, 690, 71 S.Ct. 951, 952.

█ But the respondents contend that in any event the order of the Board is unduly broad in its scope and this court should modify it before ordering it enforced by striking out the portions thereof which appear in italics in our quotation from the order earlier in our opinion. The order is certainly broader than is required merely to put an end to the specific statutory violations found by the Board with respect to the two jobs before it. On the other hand, the Board did not in its order attempt "to enjoin violations of all the provisions of the statute merely because the violation of one has been found," as in N.L.R.B. v. Express Publishing Co., 1941, 312 U.S. 426, 437, 61 S.Ct. 693, 700, 85 L.Ed. 930. The Board's order deals with specific provisions of one section of the Act which it found that the respondents had violated on two contemporaneous jobs, apparently in an attempt to implement a settled policy previously announced. These two instances of violations of the Act in carrying out that settled policy justify the Board's evident belief that the respondents would be likely to engage in similar conduct on other jobs should the occasion arise and we think this clearly warrants an order broader than the exigencies of these particular cases require. In short, we think in view of the announced policy of the respondents no longer to tolerate union

men working with non-union men on the same building project, that the Board was warranted in issuing the order it did covering persons and employers other than those directly involved in the cases before it, and that the Board is not required to deal with each similar violation of § 8(b)(4)(A) which might be indulged in by these respondents in specific situations which could reasonably be expected to arise in the future. See International Brotherhood of Electrical Workers, Local 501, A. F. of L. v. N.L.R.B., 1951, 341 U.S. 694, 705, 706, 71 S.Ct. 954, 95 L.Ed. 1299.

A decree will be entered enforcing the order of the Board.