Juan T. PENAGARICANO, Acting Economic Stabilization Administrator, Defendant, Appellant,

v.

ALLEN CORPORATION et al., Plaintiffs, Appellees.

No. 5438.

United States Court of Appeals First Circuit.

June 4, 1959.

---

Edgar S. Belaval, Asst. Atty. Gen., with whom Francisco Espinosa, Jr., Acting Atty. Gen., and Arturo Estrella,

Asst. Atty. Gen., were on brief, for appellant.

William G. Grant, Atlanta, Ga., with whom Benicio Sanchez Castano, San Juan, P. R., was on brief, for appellees.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiffs-appellees are fifteen corporations, all of which were organized under the laws of South Carolina and none of which is domiciled in Puerto Rico. Each corporation was organized for the purpose of providing housing for rent and sale pursuant to § 608 of the National Housing Act, 56 Stat. 303, as amended, 12 U.S.C.A. § 1743, and each is the owner of forty-one or more two family duplex houses in Caparra Terrace, in the Ward of Monacillo, Rio Piedras, in the City of San Juan, Puerto Rico, located on land owned by the corporation subject to a mortgage insured by the Federal Housing Administration. Pursuant to the authority conferred in the above section of the Act to "require such mortgagor to be regulated or restricted as to rents or sales, charges, capital structure, rate of return, and methods of operation," and to "acquire for not to exceed $100 stock or interest in any such mortgagor, as the Commissioner may deem necessary to render effective such restriction or regulation," the Federal Housing Commissioner acquired all of the preferred stock of each corporation and caused certain restrictions to be included in each plaintiff's corporate charter, including the following:

> "Article 7. The corporation shall not, without the prior approval of the holders of a majority of the shares of preferred stock * * * (c) permit the occupancy of any dwelling accommodations of the cor-

poration except at or below the rents fixed by the schedule of rentals provided hereinafter—.

\* \* \* \* \* \*

> "Article 9. (a) Dwelling accommodations of the corporation shall be rented at a maximum average rental per room per month fixed by the Board of Directors of the corporation and approved by the holders of the preferred stock. A schedule of rentals for the reasonable rental value of each apartment based upon the average so determined 'shall be filed with the holders of the preferred stock, prior to the leasing or offering for lease of any of the dwelling accommodations of the project, and when approved by them, shall thereafter be maintained except as provided in Article 7 hereof."

In August 1952 the Commissioner approved lease-option agreement rent schedules, insofar as here material, of $100 per month for a duplex with the requirement that the lessee-optionee keep and maintain the leased premises "in [the] same condition, order and repair, natural wear and tear excepted" as the premises were in at the time of the lease and that the lessee-optionee "strictly follow and immediately comply with any and all written instructions as to required repairs and maintenance." Under the lease-option agreements the lessee-optionee is given a credit in increasing amount for each $100 of rent paid, thus establishing as time goes on a potential credit toward payment of the purchase price fixed for the premises. Each of the plaintiff-appellee corporations has entered into a number of these agreements and various lessee-optionees have accumulated potential credits in varying amounts ranging from small sums to amounts in excess of $900.[1] The Commissioner in approving the lease-option

1. The complaint alleges the following facts admitted by the defendant:
"* * * plaintiff corporations have each entered into, and there are now in force and effect, lease-option agreements with lessees, in number as follows: Allen Corporation, 91; Bangor Corporation, 70; Chester Corporation, 45; Delaware Corporation, 89; Early Corporation, 63; Franklin Corporation, 92; Indiana Corporation, 100; June Corporation, 81; King Corporation, 73; Lane

agreements provided that the rental specified therein was not to be increased or decreased without his written consent, and although it does not appear that the Commissioner was ever asked to do so, it does affirmatively appear that in fact he has never given his consent to any increase or decrease in the rental specified and required in any lease-option agreement.

The defendant-appellant is the Administrator of the Reasonable Rents Act of the Commonwealth of Puerto Rico, 17 L.P.R.A. §§ 181–218, and he is, of course, a citizen and resident of that Commonwealth. He has taken the position that the local Act applies to the duplex houses owned by the plaintiffs-appellees, and has asserted that as to those accommodations he intends to enforce § 190 of the Act which provides that except for repairs made necessary by reason of "malicious damages" caused to the leased property by the tenant "the lessor is bound to make all necessary repairs to the rented property during the period of the lease, in order to maintain it in a condition suitable for the use to which it has been devoted, and to maintain all its services in operation." Accordingly, he has directed one of the plaintiffs, the Delaware corporation, to make repairs to a duplex owned by that corporation. Recently The Federal Commissioner caused a survey to be made for the purpose of determining the condition of the plaintiffs-appellees buildings and he is now "calling on the plaintiffs to see that the necessary repairs are made without delay."[2] The list of repairs required of each of the plaintiff corporations exceeds $3,500 in cost.

Faced with the demand of the Administrator to repair their properties in spite of the provision in the lease-option agreements that the lessees-optionees make their own repairs, which could not be changed without the written consent of the Federal Housing Commissioner, the lessor corporations sought a declaratory judgment in the court below that § 190 of the Reasonable Rents Act cannot "be constitutionally applied as to and enforced against" their duplex dwellings and that, if constitutionally applicable, the Act is not violated by the repair requirement of the lease-option agreements for the reason that those agreements embodied "two separate and distinct contracts", one for the leasing of the property and the other for its purchase at a fixed price, and the tenants' covenant to keep in repair was given as consideration for the contract of purchase. The plaintiff corporations did not ask for either coercive or monetary relief.

The District Court denied a motion by the defendant to dismiss for lack of jurisdiction and on the facts outlined above, which by stipulation of counsel it derived from the pleadings and supporting affidavits, the court below entered a declaratory judgment that the Act "cannot be applied as to, and enforced against, the duplex dwellings owned by [the] plaintiffs." The defendant-Administrator thereupon took the present appeal.

 The District Court correctly denied the motion to dismiss for lack of jurisdiction.

*First.* From the facts stated above the trial court's diversity jurisdiction under § 41 of the Organic Act of 1917 popularly called the "Jones Act," 39 Stat. 965, as amended, 62 Stat. 989, 48 U.S.C. A. § 863, is abundantly clear. See Cepero v. Pan American Airways, 1 Cir., 1952, 195 F.2d 453, certiorari denied 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653.

*Second.* While it is well established that "Puerto Rico cannot be sued without its consent," Bonet (Sancho) v. Yabucoa

Corporation, 42; Miami Corporation, 47; North Corporation, 41; Quaker Corporation, 97; Reading Corporation, 40; Santee Corporation, 90."

**2.** While under the lease-option agreements approved by the Commissioner the burden

of repairs is thrown on the lessee, the plaintiffs remain responsible to the Commissioner under the restrictions of their corporate charters to see that all necessary repairs are carried out.

Sugar Co., 1939, 306 U.S. 505, 506, 59 S.Ct. 626, 627, 83 L.Ed. 946, we believe that this is not a case for application of the rule of sovereign immunity.

We shall not attempt to support this conclusion by undertaking to distill from the cases a verbal formula or rule designed for general application. Even a cursory examination of the authorities shows the futility of venturing in that direction. Nor shall we attempt by an analysis of decisions to trace the tortuous line between suits against a sovereign and suits only against the officers of a sovereign. That was thoroughly done ten years ago in the majority and dissenting opinions in Larson v. Domestic & Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628. It will suffice for us to say that in our opinion the case at bar is ruled by the line of cases of which Philadelphia Co. v. Stimson, 1912, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570, cited with approval in the Larson case, is typical, wherein, against the defense of sovereign immunity, the Court sustained a suit by a property owner against the Secretary of War for an injunction restraining him from establishing under federal statutes harbor lines further inland than high water lines established years before by state action. With reference to the situation presented in that case, and we think the language clearly also applies to this one, then Mr. Justice Hughes speaking for a unanimous Court said (we omit his citations), at pages 619–620 of 223 U.S., at page 344 of 32 S.Ct.:

> "If the conduct of the defendant constitutes an unwarrantable interference with property of the complainant, its resort to equity for protection is not to be defeated upon the ground that the suit is one against the United States. The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded. * * * And in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments * * *. And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred. * * *

> "The complainant did not ask the court to interfere with the official discretion of the Secretary of War, but challenged his authority to do the things of which complaint was made. The suit rests upon the charge of abuse of power, and its merits must be determined accordingly; it is not a suit against the United States."

See also Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, and Georgia R. R. & Banking Co. v. Redwine, 1952, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335.

*Third.* In Mora v. Mejias, 1 Cir., 1953, 206 F.2d 377, this Court on page 386 et seq. posed the question of the applicability to Puerto Rico in its present political status of Title 28 U.S.C. § 2281 requiring that a three judge district court be convened to hear applications for interlocutory or permanent injunctions restraining enforcement of State statutes upon grounds of unconstitutionality by restraining the action of any State officer, saying that a "serious argument could * * * be made that the Commonwealth of Puerto Rico is a State within the intendment and policy" of that section. The case at bar, however, is not one requiring us to come to grips with the question of the applicability of § 2281 to Puetro Rico.

We pass the mooted question whether an application for declaratory judgment wherein no injunctive or coercive relief is requested is an application for an injunction within the meaning and intendment of § 2281. See Public Service Commission of Utah v. Wycoff, 1952, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291;

cf. Township of Hillsborough, Somerset County, N. J. v. Cromwell, 1946, 326 U. S. 620, 66 S.Ct. 445, 90 L.Ed. 358, and Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407. We can do this because, even though we assume that an application for a "pure" declaratory judgment is to be regarded as an application for an injunction for the purposes of § 2281, it is clear that the section does not apply. The reason for this is that the local Reasonable Rents Act is not under attack "upon the ground of unconstitutionality" of that Act within the meaning of § 2281. Ex parte Bransford, 1939, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249, involved an injunction sought by a national bank against the collection of state taxes upon its shares upon the grounds, *inter alia,* that the valuation either included certain of its shares statutorily exempt from taxation while held by the Reconstruction Finance Corporation or that the valuation discriminated against national bank shares in violation of the National Banking Act. Holding that a single judge could hear the case, Mr. Justice Reed writing for the court said:

"In so far as it is alleged that the assessments are void because unauthorized by the Arizona statute, the injunction sought is obviously not upon the ground of the unconstitutionality of the state statute as tested by the federal Constitution.

"The allegations that the assessment should be enjoined because violative of the statute exempting preferred stock owned by the Reconstruction Finance Corporation and R.S. § 5219 [12 U.S.C.A. § 548] depend upon no constitutional provision within the meaning of Judicial Code Section 266.[3] If such assessments are invalid, it is because they levy taxes upon property withdrawn from taxation by federal law or in a manner forbidden by the National Banking Act. The declaration of the supremacy clause gives superiority to valid federal acts over conflicting state statutes but this superiority for present purposes involves merely the construction of an act of Congress, not the constitutionality of the state enactment. This was decided as to Section 266 in Ex parte Buder [271 U.S. 461, 465–466, 46 S.Ct. 557, 70 L.Ed. 1036], and before that a similar result had been reached in Lemke v. Farmers' Grain Company [258 U.S. 50, 52, 42 S.Ct. 244, 66 L.Ed. 458] in regard to a provision of the Judicial Code granting direct appeal to this Court in cases where the sole issue was the unconstitutionality of a state statute." [Footnotes omitted], 310 U.S. at pages 358–359, 60 S.Ct. at page 950.

Turning then to the contention that the valuation was excessive in comparison with that of the stock of other banks, Mr. Justice Reed on page 361 of 310 U.S., on page 951 of 60 S.Ct. continued:

"It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court. In such a case the attack is aimed at an allegedly erroneous administrative action. Until the complainant in the district court attacks the constitutionality of the statute, the case does not require the convening of a three-judge court, any more than if the complaint did not seek an interlocutory injunction." [Footnotes omitted]

---

**3.** Section 266 of the old Judicial Code was the predecessor section of § 2281 of Title 28 U.S.C. Unlike the present section, it applied only on hearings for interlocutory injunctions. For a brief history of the section, see Hart and Wechsler, The Federal Courts and the Federal System, 848–49 (1953).

Furthermore a year later in Phillips v. United States, 1941, 312 U.S. 246, 252, 61 S.Ct. 480, 484, 85 L.Ed. 800, the Court said that " * * * an attack on lawless exercise of authority in a particular case is not an attack upon the constitutionality of a statute conferring the authority even though a misreading of the statute is invoked as justification. At least not within the Congressional scheme of § 266." In short, as the next page of the opinion in Phillips makes plain, to invoke § 266 of the old Judicial Code, and obviously likewise to invoke its present counterpart, "the complainant must seek to forestall the demands of some general state policy, the validity of which he challenges," and the section is not invoked when what is "challenged is a single, unique exercise" by a state official of the prerogatives of his office.

■ Having determined that the court below had jurisdiction, and our appellate jurisdiction under Title 28 U.S. C. § 1291 being clear, we turn now to the question whether the court below abused its discretion in exercising its jurisdiction.

This is not an easy question to answer. Despite the general obligation of a federal court to decide questions properly brought before it, it is clear that " * * * a federal court, adhering to the salutary policy of refraining from the unnecessary decision of constitutional questions, may stay proceedings before it, to enable the parties to litigate first in the state courts questions of state law, decision of which is preliminary to, and may render unnecessary, decision of the constitutional questions presented." Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 236, 64 S.Ct. 7, 12, 88 L.Ed. 9. Indeed this ground for declining to exercise jurisdiction has been invoked in so many cases decided by the United States Supreme Court as perhaps to give rise to serious doubt as to whether the lower courts in fact have "discretion" in this matter.

We have already noted, however, that for the purposes of 28 U.S.C. § 2281, it is well established that the mere fact that the "declaration of the supremacy clause gives superiority to valid federal acts over conflicting state statutes" is not deemed to constitute sufficient basis for holding that a case involving a conflict between such statutes presents a constitutional question within that Act. Ex parte Bransford, supra, 310 U.S. at pages 358–359, 60 S.Ct. at page 950, and cases there cited; and see, e. g., Case v. Bowles, 1947, 327 U.S. 92, 97, 66 S.Ct. 438, 90 L.Ed. 552. And certainly the policies behind that Congressional enactment, particularly in its present form, see Hart and Wechsler, supra, at 848–849, are much the same as those behind the judicially created doctrine of postponement. Thus by parity of reasoning a decision as to what constitutes a "constitutional question" for the former should carry force in deciding the same question in relation to the latter. These arguments, or similar ones, in fact seem to have prevailed, virtually *sub silentio*, in Rice v. Santa Fe Elevator Corp., 1947, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447, a case quite similar on its facts to the one at bar, over Justice Frankfurter's argument that the "familiar principles" of postponement were violated. 331 U.S. at page 240, 67 S.Ct. at page 1157 (dissenting opinion).

Furthermore, one district court in an apparently unappealed decision squarely held that "Deference to state regulatory measures does not require this court to forego its jurisdiction where, as here, its primary task will be to weigh the effects of federal legislation and regulation pursuant thereto as against state regulatory measures." Pennsylvania Greyhound Lines v. Board of Public Utility Com'rs, D.C.N.J.1952, 107 F.Supp. 521, 527.

These considerations seem to make good sense, and led another district court to hold that "Here the Court must appraise the reach of a federal statute when in conflict with state law. In that field it should assert and not forego its jurisdiction." United Air Lines v. Public Utilities Com. of Cal., D.C.N.D.Cal.

1952, 109 F.Supp. 13, 16. The fact that the Supreme Court saw fit to reverse in a two sentence per curiam opinion, saying only that "The judgment is reversed on authority of Public Service Commission of Utah v. Wycoff, 344 U.S. 237, 73 S.Ct. 236, [97 L.Ed. 291]" 1953, 346 U.S. 402, 74 S.Ct. 151, 98 L.Ed. 140, does not cast much light on any unperceived fallacies in the above reasoning of the lower court in that case and in the one previously cited, and the past decisions of the Supreme Court relied upon by those courts. And from the dissenting opinion of Justices Douglas and Reed, id. at pages 403–405, 74 S.Ct. at pages 151–152, and a fair reading of Wycoff against the facts of the United Air Lines case it would seem that all that the Court there decided was that no immediate "case or controversy" was presented for adjudication. Such, of course, is not true of the instant case.

Avoidance of a serious constitutional question is not, however, the only ground for the requirement that the federal courts postpone the exercise of their jurisdiction. There are additional grounds for doing so but none of them are found in the case at bar. Here not only is there no present action pending in the local courts, as there was in such cases as Albertson v. Millard, 1953, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983; American Federation of Labor v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; and City of Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355, but there is also some doubt whether such an action may be brought. Nor is this a case involving a complicated system of local law presumably beyond the ken of a federal court, such as in Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, nor is it one where a local regulatory process has been confided to a special court "supervisory in character," as in Alabama Public Service Commission v. Southern Ry., 1951, 341 U.S. 341, 71 S. Ct. 762, 767, 95 L.Ed. 1002. That the sole fact that a case presents a problem of the

meaning of a local law certainly does not suffice to support a refusal to exercise jurisdiction is made clear by the Supreme Court's own recent appraisal of its prior decisions: "This Court has never held that a district court is without jurisdiction to entertain a prayer for an injunction restraining the enforcement of a state statute on grounds of alleged repugnancy to the Federal Constitution simply because the state courts had not yet rendered a clear or definitive decision as to the meaning or federal constitutionality of the statute." Doud v. Hodge, 1956, 350 U.S. 485, 487, 76 S.Ct. 491, 492, 100 L.Ed. 577. And see Evers v. Dwyer, 1958, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed. 2d 222 (per curiam); cf. Gayle v. Browder, 1956, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114 (per curiam), affirming, D.C.M.D.Ala., 142 F.Supp. 707, and cases there cited.

Finally, it is worthwhile to note that, although the Supreme Court has, undoubtedly correctly, regarded considerations "of delay, inconvenience, and cost to the parties," City of Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 168, 172, 62 S.Ct. 986, 988, 86 L.Ed. 1355, as not being of paramount importance when pubserved here by subjecting these parties to a long circuitous journey to reach a decision on the question here presented. Compare the nine year history of the lic interests are at stake, little would be litigation in Spector Motor Service, Inc. v. McLaughlin, 1944, 323 U.S. 101, 65 S. Ct. 152, 89 L.Ed. 101, traced in Hart and Wechsler, supra, at 869–870. For a preliminary glance at the apparent clash between federal and local authority reveals that, beyond doubt, as will be somewhat more fully developed shortly, the exercise of federal authority here involved is wholly within the confines of a valid federal enactment; indeed, there is no serious suggestion to the contrary. And, whatever the local courts may hold to be the meaning of the local Act, the plaintiffs will be entitled to relief from its application. That is to say, the plaintiffs will be entitled to the relief they

request whichever way the local Act is construed. If properly interpreted its application is only with respect to premises held under straight leases, it cannot be applied to the plaintiffs' properties held under lease-option agreements. On the other hand, if it is interpreted to apply to properties held under lease-option agreements, it cannot be applied to the plaintiffs' properties for then it would conflict with federal law and the ban of the supremacy clause would come into play.

▪ Thus we come at last to the merits.

In resolving this clash of federal and local authority, the District Court stated:

"It is unnecessary to go into the history of the Federal Housing Administration to show that this instrumentality of the National Government, created under a federal statute within the competency of Congress to enact, must be permitted to operate without being hamstrung by local state legislation. Suffice it to say that a finding was made to the effect that a nation-wide construction of housing was imperative, and that the Federal Housing Administration was set up to make nation-wide construction feasible. Under this vast plan the Commissioner is vested with power to regulate rentals and other conditions respecting the projects constructed under the statute, in the manner he deems most appropriate to an efficient and speedy achievement of the legislative purpose, and to the extent that these projects are concerned, the Federal Statute is paramount.

\* \* \* \* \* \*

"Intervention by the defendant with the contractual relations between the plaintiff corporations and their lessees-tenants and revision of the rents approved by the Commissioner of the Federal Housing Ad-

ministration would frustrate the purposes of the National Housing Act, and a judgment will be entered declaring that the Reasonable Rents Act of the Commonwealth of Puerto Rico cannot be applied and enforced against the duplex apartments involved in this action."

This determination would seem clearly correct. While in some instances a federal legislative program has been made subject to the variable consequences of local law, see, e. g., Reconstruction Finance Corporation v. Beaver County, 1946, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172, there has been shown no indication of such an intent on the part of Congress in regard to the provisions here under consideration. The Commissioner has approved a lease-option agreement the terms of which are in flat contradiction to the requirements of local law in regard to allocation of repairs. A large number of these agreements have been executed and put into operation. To suggest now that the Commissioner ought to have been made aware of local law and acceded to it, and assert that, although he did not, the arrangements he has approved should be treated as though he did, or that he should be prevailed upon by the plaintiff corporations to consent to a revision of the outstanding agreement, is only to highlight the difficulties which would arise were the National Housing Act given the construction which the defendant urges. The defendant, in short, has presented no arguments of sufficient force to overturn "\* \* \* the generally accepted principle that Congress normally intends that its laws shall operate uniformly throughout the nation so that the federal program will remain unimpaired." Reconstruction Finance Corporation v. Beaver County, supra, 328 U.S. at page 209, 66 S.Ct. at page 995; cf. N. L. R. B. v. Springfield Building & Construction Trades Council, 1 Cir., 1958, 262 F.2d 494.

Judgment will be entered affirming the judgment of the District Court.