NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MISCELLANEOUS DRIVERS AND
HELPERS LOCAL 610, INTERNA-
TIONAL BROTHERHOOD OF TEAM-
STERS, CHAUFFEURS, WAREHOUSE-
MEN AND HELPERS OF AMERICA;
and Funeral Directors of Greater St.
Louis, Inc., Respondents.

No. 16450.

United States Court of Appeals
Eighth Circuit.

Aug. 8, 1961.

Morton Namrow, Atty., National Labor Relations Board, Washington, D. C., for petitioner, Stuart Rothman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Melvin J. Welles, Atty., National Labor Relations Board, Washington, D. C., on the brief.

Harry H. Craig, St. Louis, Mo., for respondents, Norman W. Armbruster, John T. Wiley, Jr., St. Louis, Mo., and Raymond Karst, Clayton, Mo., on the brief.

Before SANBORN, WOODROUGH and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

This case is before this Court upon petition of the National Labor Relations Board, pursuant to Section 10(e) of the Act as amended (61 Stat. 136, 29 U.S. C.A., § 151 et seq.), for enforcement of its order issued against Funeral Direc-

tors of Greater St. Louis, Inc., (herein called the Association or Employer) and Miscellaneous Drivers and Helpers Local 610, International Brotherhood of Teamsters, Warehousemen and Helpers of America (herein called the Union). The Board's decision and order is reported at 125 NLRB No. 29. The unfair labor practice was alleged to have occurred within this judicial circuit.

The Board found that the Union violated Section 8(b) (1) (A) and (2), and that the Association violated Section 8(a) (1) and (3) of the Act by maintaining and enforcing a closed shop hiring arrangement established by their contract. The Board found and relied upon the following evidentiary facts:

Respondent Association and the St. Louis Funeral Directors Association (herein called St. Louis Association) are employer associations authorized to bargain with the Union on behalf of their employer members, who provide funeral services and livery rentals in the St. Louis, Missouri area. The Board asserted jurisdiction over the respondent Association and Respondent Union because the business activities of at least one of the employer members of the Association met the Board's jurisdictional standards set forth in Siemons Mailing Service, 122 NLRB 81. See also W. W. Chambers & Co., Inc., 124 NLRB No. 135.

Effective July 1, 1956, respondent Association and the St. Louis Association entered into a three year contract with the Union in which they agree "to hire only members of Local 610" who were "in good standing." Section XVII of the contract states that "Under the By-laws and Constitution of Local 610, all fines and assessments imposed upon chauffeurs must be paid by said chauffeur before he can return to work." The employer associations further agreed to discharge employees who did not maintain their Union membership in good standing, upon written notice to the employer from the Union to that effect. The contract also provided that "[w]hen employers are required to hire regular funeral equipment * * * all chauffeurs of this equipment must be paid-up members of Local 610." Under the contract, in the event the Union was unable to furnish new or additional employees within ten days of the employer's request, the employer could hire a non-member, but such an employee had to become a member of the Union at the conclusion of two weeks' work. Any dispute over whether a new or additional employee furnished by the Union pursuant to the request was "qualified to do the work required," was subject to the contract's grievance procedure. Upon filling a vacancy, the employer agreed to notify the Union of such vacancy and to furnish the Union with the name of the person hired.

In practice, the Union periodically supplied each of the Association members with a list of union drivers available for call by them. The following statement appeared at the top of this list:

"The following is a list of regular extra funeral car drivers. Only the names on this list may be called upon direct, and no others. If this list has been entirely depleted by funeral directors, the union office should be contacted to secure additional men."

The members of the Association obtained their regular permanent drivers from this list. When members of the Association needed one or more extra drivers for a single occasion, they first called the drivers on the Union's list and, in the event that none of the employees listed were available, the employers then communicated directly with the Union to furnish the extra drivers.

Upon the foregoing facts, the Board concluded that, by maintaining and enforcing the closed-shop hiring arrangement created by their contract, the Union violated Section 8(b) (1) (A) and (2), and that the Association violated Section 8(a) (1) and (3) of the Act. In addition, the Board found that the Union had violated the Act by maintaining and enforcing the identical contract with the St. Louis Association.

The Board's order directs respondents to cease and desist: (1) from the unfair labor practices found; (2) from operating any exclusive hiring hall arrangement except under the standards specified in the Mountain Pacific case, 119 NLRB 883; and (3) from in any other manner infringing on their employees' exercise of rights guaranteed by Section 7 of the Act. The Board also ordered the Union to cease and desist from the violations found with respect to any other employer within its territorial jurisdiction over whom the Board would assert jurisdiction.

Affirmatively, respondents are required jointly and severally to refund to present and former employees of members of the Association all monies unlawfully exacted from them as a result of their unlawful hiring arrangement and to post appropriate notices. The Union is also directed to reimburse present and past employees of members of the St. Louis Association.

Contesting the petition of the Board for enforcement of its order, the respondents have contended here: (1) that the Board does not have jursidiction over the respondents or the issues; (2) that the decision and order must be set aside because the activities of the respondents were peaceful in nature; (3) that the findings are not supported by substantial evidence; and (4) the remedy is too broad in scope.

On the submission of the case to this Court after oral argument, it appeared that questions important to its decision were pending before the United States Supreme Court and on April 17, 1961, that Court handed down decisions in the following cases: Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. N.L.R.B., 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1; Local 357, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. N.L.R.B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11; International Typographical Union AFL-CIO Haverhill Typographical Union No. 38 and Worcester Typographical Union No. 165 v. N.L.R.B., 365 U.S. 705, 81 S.Ct.

855, 6 L.Ed.2d 36. We thereupon called upon the parties to advise what their positions were as affected by the Supreme Court decisions mentioned. In response, the Board has advised that in view of the Supreme Court's holding in Local 357, International Brotherhood of Teamsters et al. v. N.L.R.B., supra., it does not seek enforcement of paragraphs 1(a) (3) and 2(a) (2) of its order which requires that respondents cease and desist "operating any exclusive hiring hall arrangement" except under the standards specified in the Mountain Pacific case, 119 NLRB 883. Also, that in the light of the Supreme Court's ruling in Local 60, United Brotherhood of Carpenters et al. v. N.L.R.B. supra., it does not seek enforcement of paragraphs 1(b) (1), 1(b) (2), 1(b) (3) and 2(b) (1) of the order which requires the respondent to refund dues and fees to employees. As to the Board's finding that the respondents violated the Act by maintaining and enforcing a closed shop hiring arrangement established by their contract, the Board asserts that the Supreme Court decisions of April 17th in no way modify established precedent and it seeks enforcement as prayed in its petition. The respondents filed supplemental brief asserting that "the Supreme Court has foreclosed all possibility of enforcement of the Board's order." But in respect to the decisions of April 17th, they have cited and relied only upon the decisions in Local 357, International Brotherhood of Teamsters et al. v. N.L.R.B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed. 2d 11 and Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. N.L.R.B., 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1.

The respondents have attacked the jurisdiction of the Board on the ground that their business is purely local in that they conduct no burials outside the State of Missouri, and that the only proof offered as to amount of business done by them was the stipulated fact that one of the twenty-four members of the Association, Matt Hermann and Son, Inc., had a gross volume of business during 1958 totalling $605,200, and that during the

same period the firm purchased caskets valued at $58,464.61 from sources outside the State of Missouri.

### 1.

■ It appears that the Board has long asserted jurisdiction over the undertaking business. See Riverside Memorial Chapel, 92 NLRB 1594; W. W. Chambers and Co. Inc., 124 NLRB No. 135.

The finding of the Trial Examiner, affirmed by the Board, that the activities of the respondent Union occurring in connection with the operations of the respondent Association have a close, intimate and substantial relation to commerce among the several states and tend to lead to labor disputes, burdening and obstructing commerce, and the free flow of commerce is supported by substantial evidence. The labor relations of a large proportion of the entire mortuary business in St. Louis are directed by the Association named in these proceedings, and we find no merit in the contention that the Board lacked jurisdiction. Riverside Memorial Chapel, 92 NLRB 1594; W. W. Chambers & Co., Inc., 124 NLRB No. 135. See Polish National Alliance of the United States v. N.L.R.B., 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509; N.L.R.B. v. Denver Bldg. & Construction Trades Council et al., 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601; N.L.R.B. v. New Madrid Mfg. Co., 8 Cir., 215 F.2d 908.

### 2.

In support of their second point, respondents note that "there is not the slightest hint of force, violence, intimidation and reprisal or threats thereof in this case" and they argue that because of the absence of such charges and proof, the Board may not consider or abate the violations of the Act which are charged against them.

The Board is empowered by 29 U.S. C.A. § 160, "to prevent any person from engaging in any unfair labor practices (listed in Section 158) affecting commerce" and here the charge against respondents is that they did so engage. We find no support for the contention that the violation here charged and found are not preventable by the Board. The only case cited ₃by respondents in support of this point is N.L.R.B. v. Drivers, Chauffeurs, Helpers, Local Union No. 639, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710. There peaceful picketing of an employer's place of business to compel recognition or organization of the union was held not to be illegal conduct of the union "to restrain or coerce" the employees in the exercise of rights guaranteed in Section 7 of the Act. The issue there was as to the right of the union to strike against the employer. The decision is not relevant to the issues in this case where the Union and the employer have combined under contract to deny rights guaranteed to employees and prospective employees by Section 7, and we find nothing in the decision to justify the conduct charged and found against the respondents herein.

### 3.

■ The contract, shown to be in force and effect between the two associations and the Union in this case, conditions hiring on membership in the Union, and plainly exceeds the limited forms of union security agreement permitted by the proviso of Section 8(a) (3) of the Act. It also requires the payment of all fines and assessments that may be imposed by the Union as a condition of a nonunion member's continued employment with employer members of the Association. Thus a "delinquent person" failing to maintain his "union membership in good standing," according to the requirements of the Union's Constitution and By-laws, is subject to be discharged upon request from the Union.

In Radio Officers' Union of the Commercial Telegraphers Union v. N.L.R.B., 347 U.S. 17, 40, 74 S.Ct. 323, 335, 98 L.Ed. 455, the Supreme Court summarized the meaning of the legislative history as to Section 8(a) (3) and Section 8(b) (2) of the Act as follows:

"Thus §§ 8(a) (3) and 8(b) (2) were designed to allow employees to freely exercise their right to join unions, be good, bad, or indifferent members, or abstain from joining any union without imperiling their livelihood. * * * This legislative history clearly indicates that Congress intended to prevent utilization of union security agreements for any purpose other than to compel payment of union dues and fees. * * * No other discrimination aimed at encouraging employees to join, retain membership, or stay in good standing in a union is condoned."

The evidence that the respondents enforced and carried out the provisions of their labor contract as to hiring and firing in actual practice was given by the witness, Robert E. Kriegshauser, manager of Kriegshauser Funeral Home, a member of respondent Association. It was stipulated that all of the members of respondent Association "followed the same practice and procedure" as the Kriegshauser Funeral Home.

In this proceeding the respondents "concede the fact to be that the contract language of Section 111 and paragraph II of Section XVII of their labor contract is violative of Sections 8(a) (3) and 8 (b) (2)." But they say it is so only "when read in isolation, standing alone and without regard to other facts which bear upon the situation." The record however shows that the general counsel for the Board did not rest upon the provisions of the labor contract alone. He also adduced the proof of the practices which "have been followed and up to the time of the hearing were being followed * * * in performance of the above described contract." The Board's finding that the illegal union security provisions in the contract "have been maintained and enforced in practice during the six month period prior to the service of the respective charges" is supported by substantial evidence. It is not based upon a reading of the contract in isolation. It takes into consideration and specifies in detail the unfair labor practices under the contract and the enforcement thereof. It is true the respondent Association showed that the employing members derived some advantage from the labor contract in that the employees furnished by the Union were qualified men and the employers were saved the trouble of finding such personnel. We find no reason to refuse to enforce the Board's order to cease and desist from maintaining and enforcing the illegal provisions of the contract.

4.

■ As to the provision of the Board's order to the Union to cease and desist from arrangement with "any other employer within its territorial jurisdiction over whom the Board would assert jurisdiction," it appears that this provision of the Board's order has not been heretofore considered or passed upon by this Court, and the following cases are cited for the Board as tending to support its conclusion: International Brotherhood of Electrical Workers v. N.L.R.B., 341 U. S. 694, 71 S.Ct. 954, 95 L.Ed. 1299; United States v. United States Gypsum Co., 340 U.S. 76, 71 S.Ct. 160, 95 L.Ed. 89; International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20. See also Central States Drivers Council v. N.L.R.B., 105 U.S.App.D.C. 338, 267 F.2d 166; N.L.R.B. v. Springfield Building and Construction Trades Council, 1 Cir., 262 F.2d 494; N.L.R.B. v. Newspaper and Mail Deliverers' Union, 3 Cir., 246 F.2d 62; N.L.R.B. v. International Brotherhood of Boilermakers, 2 Cir., 232 F.2d 393; Red Star Express Lines v. N.L.R.B., 2 Cir., 196 F.2d 78.

As we view the evidence in this case, however, we do not find that the respondent Union is bent upon other unlawful conduct or purpose covering all other employers within the territorial jurisdiction of the Union so as to justify establishing a precedent by including the provision in this case. We do not hold that the provision may not be included in a proper case, but find insufficient evidentiary basis to support it here.

As to the remaining provisions of the Board's order, the court holds that the findings of the Board are supported by substantial evidence, its conclusions are without error, and it is entitled to have enforcement as prayed. It is so ordered.

A true copy.