ALCOA STEAMSHIP COMPANY, Inc., A.
H. Bull Steamship Company, Inc., Lykes
Brothers Steamship Company, Inc., Wa-
terman Steamship Corporation and Sea
Land Service, Inc., Plaintiffs,

v.

Ulpiano VELEZ, Manager, Puerto Rico
State Insurance Fund, Defendant.

Civ. No. 1–62.

United States District Court
D. Puerto Rico.

Jan. 8, 1968.

Jose L. Novas, Hartzell, Fernandez & Novas, Hato Rey, P. R., for plaintiffs Alcoa Steamship Co., Inc. and Waterman Steamship Corporation.

William E. Naveira, Sp. Atty., Jose C. Aponte, Atty. Gen., Commonwealth of Puerto Rico, San Juan, P. R., for defendant.

## OPINION

KILKENNY, District Judge:

Plaintiffs in this action, Sea Land Service, Inc. and Waterman Steamship Corporation, request this Court to order defendant, the manager of the Puerto Rico State Insurance Fund, to refund moneys in an amount of approximately $60,000.00 paid as insurance premiums. In July, 1961, plaintiffs were advised by letter, from defendant, that the Puerto Rico Workmen's Compensation Act (Act) covered the crews of all vessels working in the navigable waters of Puerto Rico, that they would be given a new classification and that premiums would be assessed against them. The defendant took this action under Fonseca v. Prann, 282 F.2d 153 (1st Cir. 1960), cert. denied

365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961), which held that Puerto Rican seamen working on navigable waters in Puerto Rico could not recover for negligence under the Jones' Act or under general maritime law for unseaworthiness, but could seek relief under the Puerto Rico Accident Compensation Act. Plaintiffs refused to pay the premiums and in January, 1962, instituted this action seeking a declaratory judgment on the validity of the classification. The trial court dismissed. On appeal to the First Circuit,[1] it was decided that the Act did not apply to seamen who had been employed in the continental United States and who were temporarily working in the navigable waters of Puerto Rico on foreign owned vessels. Prior to this decision, the plaintiffs Sea Land and Waterman paid, under protest, the insurance premiums demanded by the defendant and subsequently filed petitions for review before the Industrial Commission of Puerto Rico which are now pending.

▌ (1) The first question is whether this Court has jurisdiction to grant relief. Plaintiffs, in their complaint, seek only a determination of the right of the defendant to assess and collect the premiums. Nowhere do they request a refund. 28 U.S.C. § 2202, I believe, supplies the answer.[2] This section has been interpreted to mean that the relief eventually sought need not be demanded, or even proved, in the original action for declaratory relief. Edward B. Marks M. Corp. v. Charles K. Harris M. P. Co., 225 F.2d 518 (2d Cir. 1958), cert. denied 358 U.S. 831, 79 S.Ct. 51, 3 L.Ed.2d 69 (1958).

▌ (2) It is argued that this Court should abstain from granting relief until the agency has decided this question in the petition for review now pending. However, in this case, the Federal

1. 376 F.2d 521 (1st Cir. 1967).

2. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

proceeding had already been instituted, and, under 28 U.S.C. § 2202, this Court is given power to decide all questions in this type of action. As the Court has already decided the primary issue on the Commission's jurisdiction, there is no sound reason why the Court should not proceed to determine whether the premiums already paid should be refunded.

(3) Defendant asserts that the plaintiffs voluntarily paid the premiums. The new classification was made in 1961, but the plaintiffs did not pay the premiums under protest until 1965. A formal protest, as filed by plaintiffs, does not in itself make the payments involuntary. Richfield Oil Corp. v. United States, 248 F.2d 217 (9th Cir. 1957); City of Franklin v. Coleman Bros. Corp., 152 F.2d 527 (1st Cir. 1945), cert. denied 328 U.S. 844, 66 S.Ct. 1026, 90 L.Ed. 1618 (1946). To recover, the payment must be made under a species of duress. City of Franklin v. Coleman Bros. Corp., supra. Duress does not necessarily mean force or personal fear, but rather that pressure of circumstance which compels the will of man to yield to an exaction or a payment to release his property from some illegal hold upon it. The New York Court warns us that these are general rules that cannot be applied without examination or analysis. Adrico Realty Corp. v. City of New York, 250 N.Y. 29, 164 N.E. 732, 64 A.L.R. 1 (1928). Plaintiffs claim, and I agree, that the payments were made under duress in 1965 because, under Section 25 of the Puerto Rican Workmen's Accident Compensation Act, 11 L.P.R.A. § 26, a policy cannot be issued to cover only a part of the employer's activities, and, hence, if they refused to pay, they would have been non-insured employers, not only in respect to the newly created classification, but also in respect to all their operations. The plaintiffs filed this declaratory judgment action and have continuously contested defendant's right to collect premiums. Suit was filed in 1962, but final determination was not reached in the First Circuit until April, 1967—five years later. Plaintiffs should not be required to sit for five years and take this enormous risk. It has been said that aside from its bearing upon involuntariness, a protest when payment is made serves two purposes: (1) it serves notice upon the government of the discontent of the taxpayer, and (2) it defines the grounds upon which the taxpayer stands. District of Columbia v. McFall, 88 U.S.App. D.C. 217, 188 F.2d 991, 992 (1951). While it is true that the Courts should not order a refund where there is no special statutory provision and where the payment is voluntary. Bonet v. Yabucca Sugar Co., 306 U.S. 505, amended 307 U.S. 613, 59 S.Ct. 626, 83 L.Ed. 946 (1939), that rule should not be applied where the totality of circumstances produce an atmosphere in which plaintiffs were thwarted and felt compelled to tender payment. Here, there is no doubt that defendant knew plaintiffs were paying under such compulsion. True enough, only two of the companies out of the five contesting the classification made payments. The record, however, is silent on whether similar demands were made against the other plaintiffs. In this periphery, I do not believe an adverse inference can be drawn, and I so find.

(4) Next, the defendant argues that plaintiffs cannot recover the premiums paid inasmuch as the risk had attached and the premiums were, therefore, earned by defendant. Commonplace reasoning dictates a rejection of this theory. Manifestly, the appellate decision [3] holding that the Act was inapplicable carries with it a logical conclusion that a risk never attached and that no premiums were earned. The fact that defendant provided plaintiffs with an accident report form on which injuries could be reported is of no importance. For that matter, plaintiffs never used the form, but referred all cases to the United States Public Health Service.

**3.** 376 F.2d 521, 523–524 (1st Cir. 1967).

Accordingly, neither waiver nor estoppel is involved. Fleetwood Acres v. Federal Housing Administration, 171 F.2d 440 (2d Cir. 1948) does not support defendant's theory. There, the risk had attached. The statute under scrutiny required the insurance premium to be paid annually in advance. When the premium became due, the plaintiff paid the required premium. Later, the plaintiff exercised its option by paying off the mortgage debt and asked for a refund on the unearned premium. The Court held that under the statute and under the insurance contract, construed together, the plaintiff was not entitled to have a part of the premium returned.

Superficially, Fidelity & Cas. Co. of N. Y. v. Dierks Lbr. & Coal Co., 133 Mo. App. 637, 114 S.W. 55 (1908), would seem to support the defendant's proposition. On closer analysis, it appears that in the action for recovery of the premiums paid, the assured alleged fraud and mistake. The cause was tried before a referee who found the issues of fact in favor of the insurance company. No issue was framed on whether the premiums were earned. In passing, the appellate court held that the plaintiff had earned the premium, that it would be an act of the grossest injustice to deny recovery and that after the risk had been carried and the premium earned, it was too late to consider questions such as raised by the defendant. Clearly, the Missouri case is not in point.

■ (5) Lastly, defendant urges that it acted as would a reasonable, prudent person under the circumstances. The contention is without merit. That defendant acted illegally has been conclusively established by the decision of the appellate court. It is crystal clear that defendant would be unjustly enriched if it was permitted to retain the fruits of its illegal demands.

This opinion shall serve as my findings and conclusions. Plaintiffs' counsel shall prepare, serve and present an appropriate judgment.

It is so ordered.