**ALCOA STEAMSHIP COMPANY, Inc.,
et al., Plaintiffs, Appellants,**

**v.**

**Concepcion Perez PEREZ, Manager, Puer-
to Rico State Insurance Fund,
Defendant, Appellee.**

**ALCOA STEAMSHIP COMPANY, Inc.,
et al., Plaintiffs,**

**v.**

**Concepcion Perez PEREZ, Manager, Puer-
to Rico State Insurance Fund,
Defendant, Appellee.**

**Sea-Land Service, Inc., Intervenor,
Appellant.**

**Nos. 7297, 7298.**

United States Court of Appeals,
First Circuit.

Heard Feb. 3, 1970.

Decided April 16, 1970.

**434**

Nicolas Jimenez, San Juan, P. R., with whom Jose Antonio Fuste, Hartzell, Fernandez, Novas & Ydrach and Jimenez & Fuste, San Juan, P. R., were on brief, for appellants.

Matthew J. Faerber, Newport, R. I., with whom J. F. Rodriguez-Rivera, Acting Sol. Gen., Americo Serra, Asst. Sol. Gen., and Arturo Aponte-Pares, Atty., Dept. of Justice, were on brief, for appellee.

Ramon A. Martinez and Reginald J. Barney, San Juan, P. R., on brief for Yolanda Rios Cortes et al., amici curiae.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

In 1962 five shipping companies, appellants and two others not presently involved, incorporated in various states of the United States, whose vessels called at Puerto Rican ports, brought suit in the United States District Court against the Manager of the Puerto Rico State Insurance Fund.[1] Plaintiffs' seamen, hired in stateside ports and covered for personal injury under various provisions of the federal law, were claimed by the Manager to be compulsory insureds, while in Puerto Rico territorial waters, under the Puerto Rico Workmen's Accident Compensation Act. 11 L.P.R.A. § 1 et seq. Accordingly, the Manager requested preliminary statistics, and asserted that he was about to collect premiums. Alleging that to require such duplication of coverage for seamen who were unconnected with Puerto Rico by either residence or contract was outside the power of the Puerto Rico legislature, plaintiffs sought a declaratory judgment of nonliability. Of present moment, plaintiffs also sought "any other remedy or relief which may be just, equitable and proper." Nothing of consequence occurred in the suit until September 1965, when a joint stipulation of facts was entered into, followed by a dismissal of the action by the court (a visiting judge). An appeal followed and we reversed, holding plaintiffs' position to be well taken. Alcoa S. S. Co. v. Velez, 1 Cir., 1967, 376 F.2d 521.

In the meantime, in 1965, appellee made an assessment of premiums due and a demand upon the three present appellants. Appellants paid under protest, and following our decision they included in their motion for final judgment an order for repayment. The court (a second visiting judge), finding that the ille-

---

1. The present respondent appellee is a successor Manager. The change is inconsequential, and we will speak indiscriminately of the appellee. F.R.Civ.P. 25(d).

gal payments had been exacted under duress, Alcoa S. S. Co. v. Velez, D.P.R., 1968, 285 F.Supp. 123, granted the motion and entered judgment accordingly. Thereafter appellee moved for relief from the judgment insofar as it required return of the premiums, asserting that they had been turned over to the Treasurer of Puerto Rico, and that such order was in effect against the Commonwealth, which possessed governmental immunity. The district court granted the motion, Alcoa S. S. Co. v. Perez, D.P.R., 1968, 295 F.Supp. 187, and these appeals followed.

█ In its opinion allowing the motion the district court developed the fact that the Commonwealth of Puerto Rico enjoys sovereign immunity in common with other governments. With this we readily agree. Unfortunately, in its occupation with this matter, the court lost sight of the real question in the case: the right of the Commonwealth to exact payments by duress while it is litigating their legality, and then, when the illegality has been adjudicated, respond that it cannot be required to return what it has taken.

█ To begin at the very beginning, little need be said with regard to the Commonwealth's point that plaintiffs having had the "benefit" of the insurance for the period covered by the premium payments, the premiums have been earned and cannot be considered to be due back. Plaintiffs never sought this insurance, have protested from the outset that they did not want it, and have never made any claim against it. By appellee's reasoning a man who kidnapped a victim for ransom, upon being apprehended would have a claim for the taxi fare. Plaintiffs did not ask for this ride, and are not to be told that it must be paid for.

█ Appellee did not assert in its motion for relief from judgment that the court erred in finding the premium payments had been collected by duress, and does not do so now. Consequently, we merely note briefly the basis of that finding. The failure to pay premiums when due is a criminal offense. 11 L. P.R.A. § 18. Furthermore, under section 16, it exposes the employer to substantial civil liabilities to an injured employee. This is typical duress. *E. g.*, Restatement, Restitution § 75, comment *g.* (1937). The Restatement recognizes an exception when the payor's fears lack any reasonable basis. In the light of the fact that the merits of appellants' case were questioned initially by the district court, the Commonwealth could scarcely say they were unreasonable.

Although the above is enough, in addition the district court noted a special compelling circumstance. Where employers have admittedly insurable local employees, as well as contested ones, "a policy cannot be issued to cover only a part of the employer's activities, and, hence, if they refused to pay, they would have been non-insured employers, not only in respect to the newly created classification, but also in respect to all their operations." Alcoa S. S. Co. v. Velez, D.P.R., 1968, 285 F.Supp. 123, 125. Appellee has attempted no answer to this dilemma. He is quite correct in not disputing the district court's finding that the payments presently involved were exacted by duress. *See* Atchison, T. & S. F. Ry. v. O'Connor, 1912, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436.

█ Appellee does argue that appellants had an adequate administrative remedy. He made somewhat the same point, unsuccessfully, on the prior appeal, and we disposed of it sub silentio. Suffice it to say, the provisions for recovery of excessive payments made to the State Insurance Fund are peculiar and unsatisfactory. If an employer's actual payroll turns out to be less than the amount used for computation of premiums, he may make claim and recover the overpayment in specie. 11 L.P.R.A. § 27. If, however, he overpaid because the Manager made an unlawful exaction and this should be determined after hearing, all he can receive is a credit against his future obligations. § 25(3). Of these there may be none. In fact, in the case at bar, the two principal appel-

lants in terms of amounts no longer do any business in Puerto Rico. A credit to them is worthless. The statute fails to provide for interest. Hence, even the appellant who could use the credit would have lost, in the case at bar, five years of interest. In these circumstances of inadequacy we need not reach the further question of the right of the Commonwealth to condition the recoverability of a federally unconstitutional exaction upon adherence to local procedural remedies even if they were legally adequate.

Appellee's claim of government immunity proceeds in this manner. The action seeking the declaration of nonliability was brought against the Manager of the fund, which was proper. The monies which he exacted he turned over to the Treasurer of the Commonwealth, pursuant to 11 L.P.R.A. § 26.[2] A suit to recover monies in the treasury, appellee argues, is not a suit against the Manager in his individual capacity, but against the Commonwealth. *Cf.* Mendez v. Buscaglia, Treasurer, 1945, 64 P.R.R. 707. Though the determination that appellants are not liable to pay premiums lawfully binds the Commonwealth, the court cannot order the Commonwealth to make restitution of those it collected by duress.

■ Moral appraisal of this position is not difficult.[3] The previous Solicitor General saw the legal issue as equally clear. On the prior appeal it was stated in the appellee's brief,

"We, as attorneys for the Manager, have been authorized to inform this Honorable Court that the practice has always been to reimburse the premiums illegally, incorrectly or mistakenly collected by the Fund."

The present Solicitor General, through appellee, asserts that this statement exceeded his predecessor's authority. We do not know what appellee's actual practice was, but as we have already pointed out, cash refund of these premiums is not statutorily provided for. The Solicitor General could not, by his representation, vary the Commonwealth's liability, and we must reach our decision without giving legal effect thereto.

■ We thus come to the question of sovereign immunity. In this respect we agree with appellee's assertion that he is but a nominal party, acting in a representative capacity for the Commonwealth.[4] This, however, does not resolve the issue. In point of fact appellee was a nominal party from the beginning, in spite of the fiction by which sovereign immunity is never pleadable in such injunction and declaratory judgment cases, to wit, that if the statute was illegal he was "stripped of his official or representative character." Ex parte Young, 1908, 209 U.S. 123, 160, 28 S.Ct. 441, 52 L.Ed. 714. Accord, Georgia R. R. & Banking Co. v. Redwine, 1952, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335. That this concept is but fiction is demonstrated by the fact that a final judgment of statutory invalidity is binding upon the Commonwealth. It is doubtless for this reason that the defense of this action has been at all times in the hands of the Solicitor General acting under the authority of 3 L.P.R.A. § 72.[5]

> While here the money was taken through mistake without any element of fraud, the unjust detention is immoral and amounts in law to a fraud on the taxpayer's rights."

---

2. "After said premiums have been collected, they shall be covered into the treasury of Puerto Rico, in the State Insurance Fund established by this chapter." See, also, 11 L.P.R.A. § 30.

3. We quote from the opinion in Bull v. United States, 1935, 295 U.S. 247, at 260–261, 55 S.Ct. 695, 79 L.Ed. 1421, where the federal government had collected an erroneous tax through what the Court termed a "palpable mistake." The Court said, "Retention of the money was against morality and conscience. * * *

4. In the brief filed by the Solicitor General it is stated, "Defendant affirms the State Insurance Fund is the alter ego of the Commonwealth of Puerto Rico."

5. For elaboration on this subject, see 3 Davis, Administrative Law Treatise, § 27.06 (1958).

In the ordinary situation where there has been an illegal collection by a government agent and the funds are turned in to the treasury, a suit to recover the payment goes to the heart of government immunity. *See* Smith v. Reeves, 1900, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140; Land v. Dollar, 1947, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L. Ed. 1209 (dictum); Oakley Country Club v. Long, 1949, 325 Mass. 109, 112, 89 N.E.2d 260. On the other hand, if the funds remain in the hands of the agent, it is sometimes held that recovery is permissible. Atchison, T. & S. F. Ry. v. O'Connor, *supra;* Restatement, Restitution, § 75 (1937). *But cf*. Great Northern Life Ins. Co. v. Read, 1944, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121. We need not pursue the ramifications of this doctrine; in the case at bar the funds were turned over by the appellee to the treasury. However, this turnover was done not in the ordinary course, but when the Commonwealth, through its collecting agent and represented by its Solicitor General, who had stipulated to the court's jurisdiction, was litigating the very issue with relation to the identical parties. For appellee under such circumstances to take these funds, by duress, and for the Commonwealth knowingly to accept them into the treasury, would be a clear affront to the court unless, as the then Solicitor General stated, there was an intention to return them if the legality of its action was not established. In this light we recognize no right in the Commonwealth to come in after the case had gone to judgment and plead sovereign immunity. The order of the district court is vacated, and the judgment requiring repayment, plus interest, is reinstated. The Treasurer has authority under 13 L.P.R.A. § 101 to make payment.

The action is remanded to the district court for further proceedings not inconsistent herewith.[6]

---

6. In the motion for relief from judgment appellee asserted that there had been a miscalculation. This matter was not reached by the district court, and accordingly was not considered. We assume that in squaring their accounts the parties can settle the correct amounts. If not, the court should do so for them.