CONSTRUCTION AGGREGATES CORP.,
Plaintiff, Appellant,

v.

Julia RIVERA de VICENTY et al.,
Defendants, Appellees.

No. 77–1399.

United States Court of Appeals,
First Circuit.

Argued Dec. 8, 1977.

Decided March 14, 1978.

Jay A. Garcia Gregory, with whom Fiddler, Gonzalez & Rodriguez, San Juan, P.R., was on brief, for plaintiff, appellant.

Reina Colon de Rodriguez, Asst. Sol. Gen., Dept. of Justice, and Fidel A. Sevillano Del Rio, San Juan, P.R., with whom Hector A. Colon Cruz and Ronaldo Rodriguez Ossorio, San Juan, P.R., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal concerns the limits of Puerto Rico's authority to apply its workmen's compensation law to various categories of seamen, a question already addressed in many previous decisions.[1] Beyond that it also raises complicated federal abstention questions.

Construction Aggregates Corp. ("Construction") brought suit in the United States District Court for the District of Puerto Rico in January, 1975, alleging both federal question and diversity jurisdiction and seeking a declaratory judgment and an injunction against the manager of the State Insurance Fund of the Commonwealth, the Puerto Rico Ports Authority, and the Commonwealth. Construction then moved for summary judgment after submitting certain documents. The defendants responded with motions to dismiss. The district court heard argument on the motions in August, 1975, and in April, 1977. In June, 1977 the district court ruled that no material facts were in dispute, that the eleventh amendment required dismissal of the Commonwealth as a defendant, and that principles of abstention required dismissal against all other defendants. Construction appeals from the judgment that followed.

The dispute was a consequence of the hiring of Construction by the Puerto Rico Ports Authority to dredge San Juan harbor. The parties contracted in August, 1970, and work progressed until completion. Before beginning operations Construction took out a workmen's compensation policy with the State Insurance Fund of the Commonwealth to cover the payroll period between January 1, 1971, and December 31, 1973. On January 14, 1974, Construction notified the Ports Authority that work had been completed and requested its final payment. The Ports Authority asked for several supporting documents from Construction which were required by the contract, including a letter of release from the State Insurance Fund. Construction was unable to obtain this letter, as the Insurance Fund was in the process of recalculating Construction's liability under its policy. In order to expedite the release of the final payment, Construction agreed to give the Ports Authority an irrevocable letter of credit, permitting it to draw up to $380,000 from Construction's account upon presentation of final notice of collection by the Insurance Fund for premiums owed. On December 10, 1974, the manager of the Insurance Fund notified Construction that its obligations under the policy had been recalculated and increased from $40,332 to $419,037.14, creating a deficiency of $378,705.14. Construction filed a petition for review of this assessment with the Industrial Commission of Puerto Rico on January 8, 1975. It brought this suit nine days later, and on July 14, 1975, the Industrial Commission granted Construction's motion to stay its proceedings until the district court had determined whether it would assume jurisdiction over the dispute.[2]

---

1. See, e. g., Mojica v. Puerto Rico Lighterage Co., Inc., 492 F.2d 904 (1st Cir. 1974); Alcoa Steamship Co. v. Velez, 376 F.2d 521 (1st Cir. 1967); Fonseca v. Prann, 282 F.2d 153 (1st Cir. 1960).

2. The precipitating factor in this lawsuit appears to have been a decision of the Insurance Fund sharply increasing the cost of workmen's compensation coverage. As the Supreme Court of Puerto Rico explains in Coca Cola Bottling Co. v. Industrial Commission, Nos. 0–75–340; 0–75–338 (P.R.1976), between 1954 and 1969 the manager of the Fund had applied a rule fixing a ceiling of $5,200 per employee to determine the payroll figure used to calculate the employer's liability. The assessment was determined by multiplying the payroll figure by the rate applicable to each employment category. In 1969 the manager of the Fund aban-

The core of the present controversy is the amount Construction owes on its workmen's compensation policy. An important aspect of the question is which of Construction's employees are subject to Puerto Rican workmen's compensation coverage, and which are exempt. Of the total sum claimed by the Insurance Fund, Construction alleges $109,800.51 is attributable to the payroll of seamen who were hired in the continental United States; $92,771.27 to the payroll of seamen who were hired in Puerto Rico; and $45,808.56 to technical personnel allegedly exempted from Puerto Rico's workmen's compensation statute through a provision in that enactment. Duplicate insurance coverage obtained from private carriers applied to all of the above employees. Construction contends the above assessments are illegal. It further argues, in the alternative, that the assessment for locally hired seamen should in no event exceed $20,808.51. It also asserts that excessive rates were applied to the balance of its payroll and proposes a substantial reduction. According to Construction, its total deficiency should not exceed $56,733.74, not including the cost of covering locally hired seamen.

As a matter collateral to the primary dispute, Construction seeks to have its letter of credit declared a nullity and to obtain an injunction against any collection on it by the Ports Authority. According to Construction, the Ports Authority cannot under Puerto Rican law be liable for any injuries suffered by employees of Construction, and as a result there was no consideration for the letter of credit. Inasmuch as Construction does not contest all of the deficiency assessed by the State Insurance Fund, the enforceability of this agreement will not be mooted by the outcome of proceedings before the Industrial Commission.

*Abstention*

In dismissing this suit, the district court stated that "[m]ost of the matters brought forth in the complaint are totally lacking in federal aspects" and that those federal claims presented could be resolved either by the Industrial Commission or the Puerto Rico Courts. Relying on *Alabama Public Service Commission v. Southern Ry. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); and *Hawks v. Hamill,* 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933), the district court held it inappropriate for a federal court to be involved at all.

■ The branch of the abstention doctrine relied upon by a district court—called by some a *"Burford"* abstention—is particularly difficult to define and apply. Unlike abstention in cases originating with *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), this type of abstention calls for the surrender of federal jurisdiction, not its mere postponement; and there need be present neither a constitutional issue nor a difficult and unresolved question of state law. *See generally* Field, *Abstention in Constitutional Cases: The Scope of the* Pullman *Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1153–63 (1974). It is not necessary that there be a collateral ongoing proceeding in the state court. *Compare Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *cf. Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236,

doned the $5,200 ceiling and began calculating liability according to actual payroll expenditures. No change was made in the rates to reflect the increased wage base. This new practice was not, however, communicated to the employers—for example, it was not until 1973 that the plaintiff employers in *Coca Cola* learned of their increased liability. The Su-

preme Court of Puerto Rico nonetheless sustained the application of the new method to all coverage after 1969, holding that the attempts of previous managers to limit payroll coverage were contrary to law and hence a nullity, but ordered the manager to recalculate the applicable rates in order to reduce liability to reasonable levels.

47 L.Ed.2d 483 (1976). *See generally* Fiss, *Dombrowski*, 86 Yale L.J. 1103 (1977); Field, *supra* at 1163–87. Rather, under the *Burford*-type abstention, the federal courts defer primarily because of the nature of the state regulatory interest in a particular subject matter and the potential for disruption engendered by federal intervention. Hence the doctrine may at times entirely displace the general rule that exhaustion of state administrative remedies is not a prerequisite to assertion of federal civil rights claims against state officials.[3]

The rules of a *Burford* abstention are perhaps best understood by reference to the facts of the various decisions in which they have been applied. The earliest, *Hawks v. Hamill, supra,* involved an impairment of contracts claim based on an alleged perpetual franchise for a toll bridge. The state supreme court had held perpetual grants to be prohibited by the state constitution. In refusing to place a different construction on the state constitution, the Supreme Court, per Cardozo, J., buttressed its decision by reference to equitable principles of abstention:

> "Caution and reluctance there must be in any case where there is the threat of opposition, in respect of local controversies, between state and federal courts. Caution and reluctance there must be in special measure where relief, if granted, is an interference by the process of injunction with the activities of state officers discharging in good faith their supposed official duties. . . . Reluctance there has been to use the process of

federal courts in restraint of state officials though the rights asserted by the complainants are strictly federal in origin. . . . There must be reluctance even greater when the rights are strictly local, jurisdiction having no other basis than the accidents of residence. The need is clamant in such circumstances for cautious hesitation."

288 U.S. at 60–61, 53 S.Ct. at 243.

The principles espoused in *Hawks* ripened into a holding in *Burford.* Sun Oil Co. attacked on due process and state law grounds the validity of a Texas Railroad Commission Order permitting Burford to drill certain wells in the East Texas oil fields. The Court began by noting:

> "Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, 'refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest'; for it 'is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.'"

319 U.S. at 317–18, 63 S.Ct. at 1099 (quoting *United States v. Dern,* 289 U.S. 352, 360, 53 S.Ct. 614, 77 L.Ed. 1250 (1933); *Pennsylvania v. Williams,* 294 U.S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841 (1935)). The Court proceeded to describe the complex pattern of regulation necessitated by the peculiar na-

---

**3.** *See Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Carter v. Stanton,* 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972); *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Houghton v. Shafer,* 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); *McNeese v. Board of Educ.,* 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Guerro v. Mulhearn,* 498 F.2d 1249, 1252 (1st Cir. 1974); *Raper v. Lucey,* 488 F.2d 748, 751 n.3 (1st Cir.

1973). *See generally Developments in the Law—Section 1983 and Federalism,* 90 Harv.L. Rev. 1133, 1264–74 (1977). *But see Moore v. City of East Cleveland,* 431 U.S. 494, 525–27, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (Burger, C. J., dissenting); *Runyon v. McCrary,* 427 U.S. 160, 186 n.*, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (Powell, J., concurring); *Eisen v. Eastman,* 421 F.2d 560, 567–69 (2d Cir. 1969) (Friendly, J.), *cert. denied,* 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970); *Developments, supra* at 1272–74; Comment, *Exhaustion of State Administrative Remedies in Section 1983 Cases,* 41 U.Chi.L.Rev. 537 (1974); *cf.* P. Bator, P. Mishkin, D. Shapiro, H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 1247–50 (1973); note 6 *infra.*

ture of diverse ownership of the single East Texas field and the disruptive effect on this regulation of conflicting state and federal interpretations of the governing law. The state had concentrated all judicial review of administrative orders initially in a single state district court. Concurrent federal jurisdiction to review these orders had resulted in considerable difficulties, requiring, after one federal ruling, the imposition of martial law and after another the convening of a special session of the legislature. As the result, the Court deemed it prudent that federal courts decline to accept jurisdiction over attacks on these orders:

"The state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts. The judicial review of the Commission's decisions in the state courts is expeditious and adequate. Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower federal courts. On the other hand, if the state procedure is followed from the Commission to the State Supreme Court, ultimate review of the federal questions is fully preserved here. . . . Under such circumstances, a sound respect for the independence of state action requires the federal equity court to stay its hand."

319 U.S. at 333–34, 63 S.Ct. at 1107.

*Burford* was followed in *Alabama Public Service Commission, supra,* where a railroad sought to challenge in federal court the refusal of the state administrative body to authorize discontinuance of a relatively small portion of its passenger service. The railroad claimed both a taking of property abridging due process and a violation of state law. The Court noted the merits of the "taking" claim depended not on the profitability of the particular route in question but on the relation of the expense of providing that particular service to the overall profitability of the railroad's operations in the state and the public need for the service rendered. 341 U.S. at 347–48, 71 S.Ct. 762. The Court observed that these considerations were entirely of local concern, and that the state had reflected its desire for a coherent public policy toward railroad service regulation by centralizing judicial review of Public Service Commission orders in a particular circuit court. Given the important local policy in question and the adequacy of state court review of the administrative action involved, the Court held the refusal of the lower federal court to abstain from entertaining a challenge to the order constituted an abuse of discretion. *Id.* at 349–50.[4]

A related line of cases involves the appropriateness of abstention in diversity suits where only state claims are asserted. A federal court is not permitted to decline jurisdiction over a dispute only because it involves difficult and unresolved questions of state law, *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). However, the subject matter may sometimes be of such intensely local concern that federal courts should not entertain such suits, even though the doctrine of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), would compel the federal tribunal to mirror the state court in every material respect. Questions of eminent domain implicating the relationship between state and local governments, *Louisiana Power & Light Co. v. Thibodaux,* 360

---

4. The area of local policy to which the federal courts have possibly granted the most deference is taxation. Both before and after the enactment of the Tax Injunction Act of 1937, 28 U.S.C. § 1341, federal courts have displayed especial reluctance to interfere with the collection of state or local taxes and have refused to open the federal forum to disputes raising these issues except where the possible inadequacy of the remedies provided by the state might result in foreclosure of federal rights. *See Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S.

293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); *United States v. State Tax Commission,* 481 F.2d 963 (1st Cir. 1973); P. Bator *et al.,* note 3 *supra,* at 978–79. An analogous policy exists with respect to utility ratemaking. *See* 28 U.S.C. § 1342. There has been no claim that the "unique considerations" presented by either taxation or utility ratemaking are at issue here. *Lynch v. Household Finance Corp.,* 405 U.S. 538, 542 n.6, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972).

U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), and of water rights in regions of the country where that resource is of paramount importance, *Kaiser Steel Corp. v. W. S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968), have been singled out by the Supreme Court for such special treatment. *See also Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) (Alaskan fishing laws held to complement and supersede federal law). But, as *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), indicates, even areas of local interest such as eminent domain are not necessarily forbidden to federal courts, if federal intervention will not have an unsettling impact on local law. *See generally Field, supra* at 1148–53.

The peculiar facts of all these cases make generalization difficult. Although federal claims were asserted in some but not others, the Court has noted that avoidance of a constitutional issue was not a ground in any of the decisions. *Colorado River Water Conservation District v. United States, supra,* 424 U.S. at 815 n.21, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (citing P. Bator *et al.,* note 3 *supra* at 1005). Justice Brennan, writing for the Court, has attempted to abstract the governing principles of these cases: "[T]he state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* at 814, 96 S.Ct. at 1245. Justice Brennan did note, however, the existence of a federal issue might make abstention less appropriate. *Id.* at 815 n.21, 96 S.Ct. 1236. Most recently Justice Marshall, also writing for the Court, has repeated this description of the cases, adding that "there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail,* —— U.S. ——, ——, n.5, 98 S.Ct. 673, 678, 54 L.Ed.2d 618 (1978). *See also Zwickler v. Koota,* 389 U.S. 241, 249 n.11, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 415 n.5, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Elsewhere the Court has characterized this particular form of abstention as an application of the forum non conveniens doctrine. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 505, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *cf. Alabama Public Service Commission v. Southern Ry. Co., supra,* 341 U.S. at 345 n.6, 71 S.Ct. 762.

The most recent decision of this circuit dealing with a *Burford* type of abstention upheld the refusal of the district court to adjudicate a fraud claim arising out of Rhode Island's insurance premium ratemaking system. *Barry v. St. Paul Fire & Marine Ins. Co.,* 555 F.2d 3, 12–13 (1st Cir.), *cert. granted on other grounds,* 434 U.S. 919, 98 S.Ct. 391, 54 L.Ed.2d 275 (1977). This court noted the drastic consequences of abstention as a defeat of the purposes underlying the grant of diversity jurisdiction, but felt that judicial economy and protection from disruption of important state concerns would be achieved by abstention. We expressed doubt that either judicial economy or freedom from disruption by itself would justify abstention, but held that the combination of these two factors justified the decision of the district court to decline jurisdiction. *Id.* at 13.

In an earlier decision presenting facts not dissimilar to the case at bar, this court upheld the assertion of jurisdiction by the district court of Puerto Rico in a dispute involving the alleged preemption of local rent control laws by federal legislation. *Penagaricano v. Allen Corp.,* 267 F.2d 550 (1st Cir. 1959). This court noted that the dispute did not involve "a complicated system of local law presumably beyond the ken of a federal court" and that the "local regulatory process has [not] been confided to a special court 'supervisory in character,' " *id.* at 557 (citing *Alabama Public Service Commission, supra; Burford, supra* ). *See also Cobb v. City of Malden,* 202 F.2d 701 (1st Cir. 1953); *In re President and Fellows of Harvard College,* 149 F.2d 69 (1st Cir. 1945). Decisions in this circuit, as elsewhere, have

reserved the *Burford* type of abstention for the relatively rare case where the equities strongly point in the direction of litigation exclusively in the state forum.

Against this background, guided by the principles of the Supreme Court opinions, we consider the appropriateness of abstention in this case. Because the claims asserted by Construction contain different abstention issues, each will be discussed separately.

### 1. Coverage of Non-local Seamen

More than a fourth of the assessment contested by Construction involves workmen's compensation coverage for seamen who were hired outside of Puerto Rico. In *Alcoa Steamship Co. v. Velez*, 376 F.2d 521 (1st Cir. 1967), this court held:

> "[T]he Puerto Rico Workmen's Accident Compensation Act cannot be applied to seamen injured in Puerto Rican waters on an American vessel owned by a corporation of a state other than Puerto Rico where the contract of employment was not entered into in Puerto Rico."

Id. at 525.[5] Construction, a non-Puerto Rican corporation, seeks the benefit of this holding. In abstaining, the district court held that the Industrial Commission and Puerto Rico courts were the appropriate bodies for determining this federal question.

 Comity and federalism are concerns that apply with great force in disputes affecting the public policy of the Commonwealth of Puerto Rico. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 91

S.Ct. 156, 27 L.Ed.2d 174 (1970). The doctrine of abstention that serves these policies applies to disputes involving the powers of the Commonwealth as it would to litigation with state officials. But it seems inconceivable that the form of abstention represented by the *Burford* line of decisions possibly could apply to prevent a federal court from enforcing the *Velez* exemption. The area of seamen's accident compensation hardly can be characterized as a peculiarly local domain; rather, under the Jones Act and the maritime law of seaworthiness, federal regulation predominates, and ordinarily is exclusive. Nor could a declaratory judgment vindicating Construction's *Velez* claim be deemed a disruptive influence on local law. Such a judgment would simply remove from further consideration by the Commonwealth a class of workers formerly employed by Construction. It would not affect disputes involving other workers or interfere with future regulation properly within the power of the Commonwealth. No facial attack on a statute or regulation of any Puerto Rican governmental body is involved; the only administrative practice, if any, that would be upset by the order would be the course of conduct declared impermissible in *Velez*.

Not only does the form of abstention invoked by the district court seem inappropriate as a means of dealing with this issue, but we can conceive of no other rationale warranting abstention. This claim does not raise difficult constitutional issues that might be avoided, or at least put in a different posture, by authoritative disposition of state law issues through the state courts. *See Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct.

---

**5.** Although the basis for the *Velez* holding is not immediately apparent from the face of the opinion, earlier decisions of this court make clear that the limitation on Puerto Rico's power in the field of accident compensation was due not to preemption by federal law, but rather because of limitations implicit in the power allowed to Puerto Rico in this field. In *Fonseca v. Prann*, 282 F.2d 153 (1st Cir. 1960), this court interpreted §§ 7, 8, and 37 of the Second Puerto Rico Organic Act, currently codified at 48 U.S.C. §§ 748, 749, 821, as conferring on the Commonwealth the authority to apply its

workmen's compensation laws within its territorial waters to the exclusion of other federally mandated compensation programs, including the Jones Act and the maritime law of unseaworthiness. *Velez* interpreted this grant as not extending to seamen hired outside of Puerto Rico. Thus the assertion of power attempted by the Insurance Fund was negatived in *Velez* as ultra vires the authority which Congress, acting under Article IV, § 3, cl. 2 of the United States Constitution, had conferred upon the Commonwealth.

2857, 49 L.Ed.2d 844 (1976); *Fornaris v. Ridge Tool Co., supra*; *Railroad Commission v. Pullman Co., supra*. The only federal question involved in the *Velez* claim is one clearly settled by prior circuit precedent, and there exist no ambiguous state law issues that might obviate the dispute. The Supreme Court previously has observed that the fact that the courts of Puerto Rico also might be expected to honor the federal claim advanced by a plaintiff does not by itself justify abstention by a federal court. *Examining Board of Engineers v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976). Nor does this suit seek to interfere with any ongoing proceedings in the Puerto Rico courts, thus possibly invoking the doctrine of *Younger v. Harris, supra*, or the prohibitions of the Anti-Injunction Act, 28 U.S.C. § 2283. *See Vendo Co. v. Lektro-Vend Corp., supra*. Furthermore, the *Velez* claim is "ripe" for adjudication, as the demand for payment by the State Insurance Fund constituted a "definite administrative or institutional determination" of the issue. *Raper v. Lucey*, 488 F.2d 748, 751 n. 3 (1st Cir. 1973).

Perhaps defendants' most plausible argument for declining to decide the *Velez* issue in this proceeding is that Construction has not yet fully exhausted all of its administrative remedies. Determinations of liability by the State Insurance Fund are appealable to the Industrial Commission, and Construction has filed appeals as to all its claims. Although the Industrial Commission stayed its proceedings pending resolution of this litigation in the district court, the Industrial Commission might overrule the State Insurance Fund and honor Construction's *Velez* claim were the district court to hold up its decision. The defendants argue that at the very least the district court should be directed to defer action until the Industrial Commission has ruled. Construction responds by describing this suit as grounded on 42 U.S.C. § 1983, hence no administrative exhaustion requirement applies.

But whether the assertion of Construction's *Velez* claim can be treated as a § 1983 suit, and, if so, whether the usual rule of no administrative exhaustion is applicable, are difficult questions that need not be answered here.[6] This court previously has held

---

6. Although § 1983 generally is thought of as a vehicle for the assertion of constitutionally protected rights against state officials, the statute by its terms extends to "any rights, privileges, or immunities secured by the Constitution *and laws*" (emphasis supplied). Thus this claim, grounded on an assertion that the Commonwealth has exceeded the authority granted to it by Congress, *see* note 4 *supra*, seems to come within the scope of § 1983 and may, for that reason, be free from the administrative exhaustion requirement ordinarily imposed in suits of this nature. *Compare Illinois Commerce Commission v. Thomson*, 318 U.S. 675, 63 S.Ct. 834, 87 L.Ed. 1075 (1943); *First National Bank v. Board of County Commissioners*, 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924); *Pacific Live Stock Co. v. Lewis*, 241 U.S. 440, 36 S.Ct. 637, 60 L.Ed. 1084 (1916), *with* authorities cited at note 3; *cf. Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908) (Holmes, J.). However, while it might be assumed that all suits brought under § 1983 enjoy all of the procedural advantages attendant to that statute, the Supreme Court has not addressed that issue and some of its decisions appear to lean the other way. In *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the Court refused to hold, although it had an opportunity to do so, that 28 U.S.C.

§ 1343(3), the jurisdictional counterpart of § 1983, extended to federal statutory claims. And in *Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970), the Court held the Anti-Injunction Act, 28 U.S.C. § 2283, applied to a suit asserting a federal preemption claim. Only two years later the Court held that § 1983 provided a statutory exemption to the Anti-Injunction Act; the Court treated *Atlantic Coast Line* as not presenting a § 1983 claim. *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Of course, *Hagans* might be explained as grounded in the different statutory language of § 1343(3), and the result in *Atlantic Coast Line* could be justified either because of an absence of state action or as an application of the principles of abstention exemplified in *Juidice v. Vail, supra*. On the other hand, the total elimination of an administrative exhaustion requirement that would be effected by Construction's reading of § 1983, and the reservations recently expressed by members of the Supreme Court about the no administrative exhaustion requirement in § 1983 suits generally, *see Moore v. City of East Cleveland, supra*, 431 U.S. at 525–27, 97 S.Ct. 1932 (Burger, C. J., dissenting); *Runyon v. McCrary, supra*, 427 U.S. at 186 n.*, 91 S.Ct.

that the Industrial Commission does not provide an adequate administrative remedy for those employers who wish to contest an exaction by the State Insurance Fund on federal grounds. *Alcoa Steamship Co. v. Perez,* 424 F.2d 433 (1st Cir. 1970). This court noted in *Perez* that the only relief the Industrial Commission is authorized to give for an illegal exaction of this kind is a credit against future obligations. *Id.* at 435–436; P.R.Laws Ann. tit. 11, § 25(3). A credit will hardly compensate a company such as Construction that no longer is doing business in Puerto Rico. Although it is true that Construction has not yet paid any part of the deficiency to the Fund, there is no assurance that this will continue to be the case. The manager of the Fund is obligated to collect assessments promptly and without regard to pending appeals before the Industrial Commission. P.R.Laws Ann. tit. 11, § 25(2). It would appear that the manager is without authority to authorize any stay in collection. *See Coca-Cola Bottling Co. v. Industrial Commission,* note 2 supra.

In light of the inadequate state remedy available to Construction and the absence of any other factor that traditionally has been required as a prerequisite to abstention, we are of the opinion that the district court erred in declining to address the merits of Construction's *Velez* claim. To the extent Construction employed seamen in Puerto Rican waters who were hired outside of Puerto Rico, it is entitled to a declaratory judgment exempting it from liability to the State Insurance Fund for workmen's compensation coverage relating to these seamen. Upon remand, and after such further proceedings as are necessary, the district court should enter a judgment determining the extent of such exemption here.[7]

2. *Coverage of Locally Hired Seamen*

A substantial portion of Construction's liability to the State Insurance Fund involves coverage for seamen hired in Puerto Rico. Construction claims the Fund lacked the power to assess this liability, as federal admiralty and maritime law provided the exclusive means for compensating these seamen. Although it recognizes that in *Fonseca v. Prann,* 282 F.2d 153 (1st Cir. 1960), this circuit held directly to the contrary, Construction argues that subsequent cases have limited that holding. As recently as four years ago, however, this circuit held that the Puerto Rico workmen's compensation statute is the exclusive remedy for locally hired seamen injured while working in Puerto Rican waters. *Mojica v. Puerto Rico Lighterage Co., Inc.,* 492 F.2d 904 (1st Cir. 1974). *Manuel Caceres v. San Juan Barge Co.,* 520 F.2d 305 (1st Cir. 1975), on which Construction seeks to rely, held only that a Puerto Rican seaman injured outside Puerto Rican waters could seek relief against his employer under the Jones Act. This court was careful to distinguish *Mojica, Fonseca,* and similar decisions on the ground that the injuries in those cases occurred within Puerto Rican waters. *Id.* at 306.

In terms of abstention, this particular claim by Construction stands in exactly the same posture as that previously discussed. No factor traditionally seen as a prerequi-

82 (Powell, J., concurring); *Gibson v. Berryhill, supra,* 411 U.S. at 573–75, 93 S.Ct. 1689, suggest that it is best to treat the problem as an open question—and not one that need be decided here.

7. During this appeal defendants for the first time argued that even if coverage of this class of seamen constituted a violation of *Velez,* Construction had consented to the coverage and thereby waived its right to protest now. In support of its arguments defendants submitted a quantity of material relating to Construction's initial application for coverage, none of which was part of the record below. The prop-

er forum for considering this material is the district court; this court cannot consider factual material not presented to the court below. *See* Fed.R.App.P. 10. If on remand defendants are able to establish that Construction agreed to coverage of certain workers that the Insurance Fund had no power to require, after having been fully informed by the Fund of its lack of authority, the district court can accordingly limit Construction's relief. Unless the Insurance Fund can demonstrate that its conduct was not in violation of *Velez,* no adjustment is called for. *See Alcoa Steamship Co. v. Perez,* 424 F.2d 433 (1st Cir. 1970).

site to abstention exists. In addition, the very fact that Construction's claim of exemption as to these seamen is patently frivolous in light of prior precedent militates in favor of accepting jurisdiction so that the claim can be resolved once and for all. By declaring that federal law provides no bar to the imposition of workmen's compensation liability for this class of seamen, the district court would eliminate an issue that might possibly sidetrack future state proceedings in this matter. *Cf. North Dakota State Board of Pharmacy v. Snyder's Drug Stores*, 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973). An appropriate declaratory judgment in this regard should therefore be entered upon remand.

### 3. The Rate Applicable to Locally Hired Seamen and Shore Workers

Construction argues in the alternative that even if its locally hired seamen should not be excluded from coverage under Puerto Rico workmen's compensation law, the manager of the State Insurance Fund acted arbitrarily and capriciously in assessing the payroll of these employees at a rate of $10.70 per $100. It makes the same claim with respect to shore workers not claimed to be exempt. Construction does not allege that these rates constitute a taking of property without just compensation or otherwise violate federal law; the claim appears to be grounded entirely on Puerto Rican law.

■ The appropriateness of abstention as to these claims is clearly different than as to those previously discussed. To begin with, it is not even clear that the district court had any jurisdiction to decline with regard to these issues. The laws of the Commonwealth provide for review of rates set by the Insurance Fund in the Industrial Commission, with direct review of the decision of the Industrial Commission in the Supreme Court of Puerto Rico. P.R.Laws Ann. tit. 11, §§ 12, 25. Construction has not cited any statute or authority granting

to the Puerto Rico courts jurisdiction to entertain an attack on an Insurance Fund rate in any other manner. If the laws of Puerto Rico do not recognize a cause of action permitting a collateral attack on these rates, a federal court in the exercise of its diversity jurisdiction would be unable to entertain any such claim.

■ Even, however, if the district court had jurisdiction over these issues, its refusal to determine them was correct. The rate-making process of the Insurance Fund is an area of intensely local interest, and judicial review of the process has been centralized in a single court. Intervention by federal courts could disrupt the efforts of the state to develop a coherent rate structure. The administrative remedy for this sort of claim is adequate, inasmuch as cash refunds can be obtained for excessive rates, as opposed to assessments for exempt workers. *See Alcoa Steamship Co. v. Perez, supra*, 424 F.2d at 435–36. We accordingly affirm so much of the judgment below as dismisses with respect to these matters.

### 4. Coverage of Non-local Technical Workers

Approximately 12% of the deficiency claimed by the Insurance Fund relates to technical workers hired in the states who enjoyed insurance benefits comparable with or superior to those provided by the Commonwealth's workmen's compensation coverage. To prevent duplicate compensation for such workers, Puerto Rico has provided a limited exemption to its Workmen's Compensation Act. P.R.Laws Ann. tit. 11, § 28a. An employer can obtain that exemption, however, only by applying for it to the manager of the Insurance Fund and presenting satisfactory evidence to him of eligibility. The record in this case contains no evidence that Construction has so applied.

■ Construction argues that the failure of the manager to exempt this class of workers constitutes a violation of the full

faith and credit clause and the Puerto Rican Federal Relations Act, particularly 48 U.S.C. § 737. Inasmuch as the action of the Insurance Fund in no way interferes with Construction's obligations to its employees under its separate insurance contracts, but only requires additional insurance coverage for these employees, these federal claims appear completely meritless. As Construction has not yet acted to obtain the exemption afforded under state law, it has at present no state law claim to press in either federal or state court. Dismissal of this portion of the suit was therefore proper.

### 5. *Validity of the Letter of Credit*

In order to obtain release of the compensation owed it under the dredging contract, Construction gave the Ports Authority a letter of credit in the amount of its potential liability to the Insurance Fund. In effect Construction posted security for its workmen's compensation obligations. Construction now seeks to void the letter of credit on the grounds that it was obtained by duress and without consideration. The question is entirely one of Commonwealth law. Furthermore, the issue is independent of the resolution of Construction's dispute with the Insurance Fund. Even if Construction obtains every credit it seeks in its appeal to the Industrial Commission, it will still owe money to the Insurance Fund. By attempting to nullify the letter of credit, Construction is not attacking the underlying obligation but only the security. Consequently this claim involves none of the difficult jurisdictional and administrative law issues that bristle in the other relief it seeks.

■ Diversity being present and more than $10,000 being at stake, we hold that the district court exceeded its authority in refusing to resolve this fairly straightforward contract dispute. As the Supreme Court has said, the mere presence of difficult questions of state law does not provide a district court a basis for refusing to hear

a case. *Meredith v. Winter Haven, supra.* A determination of the merits of this claim will not interfere with the administration of the workmen's compensation law or otherwise put the district court in the posture of disrupting the affairs of the Commonwealth. So much of the district court's order as dismisses this part of the dispute is reversed, and the court on remand should after further proceedings decide this claim and grant such relief, if any, as it determines.

### 6. *The Commonwealth as a Party*

■ Construction joined the Commonwealth of Puerto Rico as an additional party defendant, although all the relief it seeks can be obtained from the other defendants in their official capacity. The fiction underlying *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which permits federal courts to grant equitable relief against state officials in spite of the eleventh amendment, forbids by its very terms equitable relief directed to a state itself. Those cases involving state consent to suit in federal court cited in Construction's brief involve claims for money damages, which are not at issue here. As dismissal of the Commonwealth as a defendant on eleventh amendment grounds was entirely proper, the judgment below is, in this respect, affirmed.

*The judgment of the district court is affirmed in part, reversed in part, and vacated in part; and the cause is remanded for further proceedings in accordance herewith.*